UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHALL RAY GLOVER,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC,<br><br>Defendant. | Case No.: 18cv2330 JM(NLS)<br><br>**ORDER ON PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL** |

Presently before the court is Plaintiff's Motion to Seek Disqualification of Opposing Counsel (Doc. No. 41). A hearing on the motion was held on February 3, 2020. Counsel for Defendant Mr. Daniel Struck and Mr. Matthew Mahoney, along with Ms. Bessy Glaske of CoreCivic, appeared. Neither Mr. David Kaufman, Mr. Marshall Glover nor Ms. Elizabeth Bumer appeared, despite being ordered to do so.[1] (*See* Doc. No. 53.) For the reasons set forth below, the motion is denied.

**I. Background**

Plaintiff filed a negligence claim in state court that was removed to this court. Plaintiff's alleged injury occurred at Ocean View, a minimum-security re-entry facility in San Diego, which is owned and operated by Defendant, CoreCivic, Inc. At the time of the

---

[1] The courtroom deputy tried unsuccessfully to reach both Mr. Kaufman (three times) and Ms. Bumer (once) on their cell phones before the noticed 10:00 a.m. hearing proceeded at 10:20 a.m.

1

alleged incident, Plaintiff was a prisoner on work release/furlough. It is alleged that on June 14, 2016, while he was descending an exterior stairway carrying two bags of trash, Plaintiff was struck by a door that was opened out onto a landing, causing him to trip and fall down the stairs. (Doc. No. 1 at 12.) Plaintiff was found at the bottom of the stairs unconscious, soaked in urine and feces. (*Id.*) He alleges that he suffered "a concussion, and paralysis to the lower body, and permanent injury to his spine." (*Id.* at 13.)

The defense firm of Struck Love Bojanoski & Acedo, PLC in Chandler, Arizona retained Mr. Mahoney as local counsel. On December 11, 2018, Mr. Mahoney duly filed a notice of appearance with the court. (Doc. No. 11.) Mr. Daniel Struck and Ms. Dana Keene (nee Giallonardo) of the Struck Love law firm proceeded to file requests to appear pro hac vice which were approved by the court. (Doc. Nos. 12 -14.) Before forming his own firm, Mr. Mahoney worked at Seltzer Caplan McMahon Vitek ("SCMV") from 2003-2014, along with Mr. Charles "Chuck" Goldberg.

On June 14, 2019, Ms. Bumer, Plaintiff's former co-counsel, sent an email to Ms. Keene, Mr. Struck, Mr. Mahoney and Mr. Kaufman, co-counsel for Plaintiff, informing all attorneys of the possible conflict. (Doc. No. 50-2 at 8; Doc. No. 50-3 at 10.)

On the same day, Mr. Mahoney responded, via email, that he did occasionally work with Mr. Goldberg, and that if Mr. Glover was one of Chuck's clients, he could represent that "such prior representation would not, in any way, have involved the exchange of confidential information material to the case in hand (pursuant to California Rule of Professional Conduct 3-310(E)). (Doc. No. 50-2 at 10; Doc. No. 50-3 at 10.) Mr. Mahoney also informed everyone that he had contacted SCMV to see if Mr. Glover was a client but had been told he was not showing up in the database as a client of the firm. Mr. Mahoney went on, "I have a vague recollection of representing a client with a variation of Mr. Glover's name. Liz, would you please ask your client if he may have been using a different name at the time that he was a client at SCMV. And also, it would be helpful if he could recall the year that he came into contact with me, and the nature of the matter." (*Id.*)

Mr. Struck also responded on June 14, 2019, stating: "it does not appear that, even if it occurred, Matt obtained any information related to this incident, and that the "conversation" took place before the fall which gives rise to this litigation. I'm not seeing anything giving rise to a conflict of interest, but please let me know, and cite the ethical rule, that might persuade us otherwise." (Doc. No. 50-2 at 11; Doc. No. 50-3 at 11.)

After initially responding on June 14, 2019, that Mr. Glover didn't recall if he used another name and didn't recall the year, it is unclear if Ms. Bumer sent any further information. (Doc. No. 50-2 at 14; Doc. No. 50-3 at 14.). Ms. Bumer attests that she conveyed to defense counsel that Mr. Glover may have used the aliases Christopher Kissinger" or "Matthew Glover". (Doc. No. 41-2, Bumer Decl., at ¶ 16.) Mr. Mahoney maintains he heard nothing more from Ms. Bumer. (Doc. No. 50-3, Mahoney Decl., at ¶ 17.)

On July 10, 2019, Mr. Struck and Ms. Keene sent a letter to Plaintiff's counsel stating that the Geo Group had informed them that Mr. Glover had been incarcerated at various GEO facilities under the name Marshall Ray Glover and Christopher Ray Kisslinger. The letter also states that various sets of records were provided under both names in response to Defendant's Subpoena Duces Tecum. Defendant reviewed the records and discovered that Mr. Glover had used 3 other aliases including Gilbert Tremble, Christopher Ray Glover and Jason Caff and had also used a different social security number. (Doc. No. 41-5 at 3-5.)

On July 15, 2019, Mr. Kaufman emailed all the attorneys on the case, the pertinent part of which states:

> As far as the Plaintiff's various aliases, Mr. Glover is concerned that CoreCivic's decision to retain local counsel that had and in some respects continues to have had an attorney client relationship with Mr. Glover does violence to the confidentiality and evidentiary privilege and protections accorded to a client's relationship with and communications with prior counsel. Plaintiff cannot but feel that the present "discovery" of Mr. Glover's aliases is anything but the product of Mr. Mahoney violating the attorney client privilege and disclosing information prejudicial to a former client that

3

> is the product of confidential information obtained from Mr. Glover. This is very concerning to Mr. Glover and similarly deserves to be put before the Court."

(Doc. No. 41-5 at 8.)

By August 26, 2019, after the potential conflict was discovered, Defendant had learned that Plaintiff has utilized at least five separate aliases including Christopher Ray Kisslinger, Gilbert Tremble, Jason Caff, Christopher Ray Glover, and Marshall Raien Glover and one other social security number. (*See e.g.* Doc. No 41-5 at 28)

On January 2, 2020, Plaintiff filed the motion to disqualify Mr. Mahoney from the litigation, inferring that the discovery of the aliases came about because of some questionable conduct on the part of defense counsel and claiming that the defense counsel is exploiting the confidential information Mr. Mahoney possesses. (Doc. No. 41.) Further, Plaintiff wished to have the conflict associated with Mr. Mahoney imputed to Ms. Keene and Mr. Struck. (Doc. No. 41-1 at 31.)

Defendant opposes the motion and, in support, has submitted a declaration from Mr. Mahoney that contradicts almost all of Plaintiff's and his counsel's assertions. (Mahoney Decl.) Mr. Mahoney declares that as local counsel he has no involvement in substantive discovery, motions practice, or communications with Plaintiff's counsel and that he has not conveyed any information about Plaintiff to either Mr. Struck or Ms. Keene. (Mahoney Decl. at ¶¶ 22, 23.)

**II. Legal Standard**

Motions to disqualify are governed by state law. In this District the California Rules of Professional Responsibility apply. *See* CivLR 83.4.b. (every attorney before this district court must "comply with the standards of professional conduct required of members of the State Bar of California.")

In instances of successive representation, when an attorney undertakes to represent a client adverse to a former client, the focus is on confidentiality. *Western Sugar Coop. v. Archer-Daniels-Midlands Co.,* 98 F. Supp. 3d 1074, 1080 (C.D. Cal. 2015). The new rule of Professional Responsibility 1.9 governs duties to former clients and provides that:

(a) a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent.

Disqualification is appropriate if "the targeted attorney (1) has actual knowledge of material confidential information or (2) is presumed to have acquired confidential information because of the relationship between the prior representation and the current representation." *Faughn v. Perez*, 51 Cal. Rptr. 3d 692, 699–700 (Cal. Ct. App. 2006).[2]

The former client may disqualify the attorney by showing a "substantial relationship" between the subjects of the prior and current representations. *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994). This protects the enduring duty to preserve client confidences that survives the termination of the attorney's representation. When a substantial relationship between the representations is established, the attorney is automatically disqualified from representing the second client." *Western Sugar*, 98 F. Supp. 3d at 1081 (internal citations omitted). To establish a substantial relationship the party moving for disqualification must show that "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Id.* (citing *Khani v. Ford Motor. Co.*, 215 Cal. App. 4th 916, 921 (2013)). The substantial relationship test balances "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical

---

[2] The old version of the rule, California Rule of Professional Responsibility 3-310(E) governing successive representation provided that a member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment. Mr. Mahoney filed his notice of appearance in this case on December 11, 2018, after the new rule became effective on November 1, 2018.

abuse underlies the disqualification motion." *People v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 377–78 (Cal. 1999).

"The law is now well-established that, once a showing has been made that someone at the adverse party's firm possesses confidential attorney-client information materially related to the proceedings before the court, a rebuttable presumption arises that the information has been used or disclosed in the current employment. *O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 115, 1131 (Jan 7, 2019) (citing *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 596(1991). "The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff." (*Ibid.*)

The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers. *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985).

## III. Discussion

Ms. Bumer and Mr. Glover have both submitted declarations in support of Plaintiff's motion that contain relatively similar recitations of the discovery of Mr. Mahoney's existence and the potential conflict. (Bumer Decl.; Doc. No. 41-2, Glover Decl.) They are as follows:

In 2003, Mr. Goldberg purportedly sent Mr. Mahoney to meet with Mr. Glover who he was representing on a criminal matter. (Glover Decl. at ¶ 6; *see also* Bumer Decl. at ¶¶ 7, 8.) Mr. Glover maintains that he met with Mr. Mahoney on at least two occasions and shared with him his "life story". (Glover Decl. at ¶ 7.) Ms. Bumer recites this as Mr. Glover recalling telling Mr. Mahoney information regarding his use of aliases, substance abuse history and prior criminal history, including that related to social security numbers. (Bumer Decl. at ¶¶ 9, 14.) Mr. Glover identified Mr. Mahoney in a photo pulled up on Google by Ms. Bumer, Mr. Glover's original attorney in this action. (Glover Decl. at ¶ 5;

Bumer Decl. at ¶ 10.) Mr. Glover also asserts that he has intermittently sought legal advice from Mr. Mahoney, including in 2007-08 when he was arrested on federal charges related to counterfeiting. (Glover Decl., at ¶ 8; *see also* Bumer Decl. at ¶ 13; Doc. No. 41-1 at 10.)

Also attached to Plaintiff's motion is a declaration from Plaintiff's attorney, David A Kaufman. (Doc. No. 41-4, Kaufman Decl.) Mr. Kaufman admits that he was not directly involved in the discussions with opposing counsel regarding the conflict issue when it first arose, but he takes the position that defense counsels' behavior was "quite devious and by design to go on the offensive and by hook or by crook attack the weak underbelly of Plaintiff's character, owing to his lengthy history of incarceration and substance abuse." (*Id.* at ¶ 5.)

In his declaration Mr. Mahoney does not dispute that he occasionally helped Mr. Goldberg with his criminal matters. However he only has a vague recollection of the name "Marshall" and that he may have "assisted Mr. Goldberg on a criminal matter involving an individual with a similar name to Plaintiff's. However, I could not recall them and cannot recall now what the nature of that representation was or what type of interaction I had with Mr. Glover." (Mahoney Decl. at ¶ 8.) Further, Mr. Mahoney declares that at his request SCMV have performed a client search for Marshall Glover and "the firm has no record of ever having a client by that name." (*Id.* at ¶ 9.) Mr. Mahoney also states that he does not possess any confidential information about Plaintiff, he has no recollection, knowledge or documents related to Plaintiff's early life, incarceration history, criminal history, drug history, or his use of different names/aliases or social security numbers, and that he cannot recall, if he did perform any tasks on behalf of Plaintiff, what they were. (*Id.* at ¶¶ 11, 12.) Mr. Mahoney has subsequently confirmed that SCMV did not represent Mr. Glover under either of two aliases he may have used: Christopher Kisslinger or Matthew Glover. (*Id.* at ¶ 20.) Mr. Mahoney has no recollection of having clients with these names. (*Id.* at ¶ 19.) Mr. Mahoney also declares that he has no specific recollection of the Plaintiff contacting him in 2007-08. (*Id.* at ¶ 21.)

At the hearing, Mr. Mahoney provided additional information to the court. He very credibly stated that upon further reflection he did in fact recall speaking with a Marshall Glover approximately eighteen years ago, but that: (1) he did not recall any details regarding the extent of the conversation; (2) he has absolutely no recollection of any of the information Mr. Glover provided to him, including anything related to addiction history or aliases; and (3) he doesn't recall what matter the conversation was related to or how that matter was disposed of. Mr. Mahoney maintained that any contact with Mr. Glover would have been at the behest of Mr. Goldberg because Mr. Mahoney's own practice was focused in the civil litigation arena and he did not recall ever representing any client on a counterfeiting or fraud case. Mr. Mahoney did not remember having any subsequent contact with Mr. Glover.

In addition to Mr. Mahoney's declaration, the declaration from defense counsel, Mr. Daniel Struck, states that all the information related to Plaintiff's prior aliases, incarceration history, criminal history, medical history, and drug history was obtained through GEO Group Inc., a private prison company's records, and through Plaintiff, and that Mr. Mahoney never disclosed any information related to Plaintiff. (*See* Doc. No. 50; Doc. No. 50-2, Struck Decl. at ¶¶ 18, 19.)

While Mr. Mahoney's statements at the hearing add credence to the declaration of Mr. Glover that a meeting took place, they do not necessitate the conclusion that he be disqualified from the case. Plaintiff has not actually established that an attorney-client relationship between himself and Mr. Glover, ever existed. *See Koo v. Rubio's Rests.*, 109 Cal. App. 4th 719 422 (2003). (The burden is on the party seeking disqualification to establish the attorney-client relationship). At this point in time, all that is known is that Mr. Glover may have been represented by Mr. Goldberg, not Mr. Mahoney, and that a conversation between Mr. Mahoney and Mr. Glover occurred over 18 years ago. *See Fox v. Pollack,* 181 Cal.App.3d 954, 959 (1986) (individuals cannot unilaterally create an attorney-client relationship without the agreement of the attorney). Plaintiff has not contacted Mr. Goldberg and from the papers it appears that Plaintiff may be suggesting

that it is Defendant's burden to check the county jail records for a record of the visits Mr. Mahoney allegedly made to him while he was being held under the name of Christopher Kisslinger. (*See* Glover Decl. at ¶ 9.) But, it is not Defendant's burden to prove the existence of the relationship, it is Plaintiff's. *See Koo*, 109 Cal. App. 4th at 422. Mr. Mahoney has gone so far as to contact his prior firm and it has no record of Plaintiff as a client under either the names Marshall Glover, Christopher Kisslinger or Matthew Glover. (Mahoney Decl. at ¶¶ 9, 20.) In sum, Plaintiff has not met his burden of demonstrating the existence of an attorney-client relationship in either 2003 or 2007-08.

Similarly, Plaintiff has not met his burden of identifying what, if any, confidential information was disclosed to Mr. Mahoney. Plaintiff's declaration simply sets forth a general statement that he told Mr. Mahoney "his life story" and concludes that "I'm concerned that Mr. Mahoney, having served as my attorney would know things about me from things that I told him. I told him tings [sic] in confidence that I thought would be protected." (Glover Decl. at ¶ 7, 10.) While a lawyer must "preserve the secrets[ ] of his or her client," (Cal. R. Prof. Conduct 1.6(a)), such a generalized statement on the part of Mr. Glover is insufficient and its insufficiency cannot be ignored. *See Elliot v. McFarlan United School Dist.*, 162 Cal. App. 3d 562, 572 (1985) ("conclusory statements … are insufficient. A requirement that there be some showing of the nature of the communications or a statement of how they relate to the current representation without disclosing what was actually communicated cannot reasonably be regarded as burdensome or prejudicial."). Simply put, aside from bare bones generalizations, Mr. Glover has not provided the court with any evidence regarding what, if any, confidential information he imparted to Mr. Mahoney. Finally, had Plaintiff and Ms. Bumer been available at the hearing, it had been the court's intention to question each of them as the circumstances surrounding the phot identification of Mr. Mahoney.

Additionally, Mr. Kaufman's and Ms. Bumer's sweeping assertions that Mr. Mahoney knows information about Mr. Glover's use of aliases, past aliases, various financial crimes, etc., is not borne out by the statements Mr. Mahoney made to the court.

9

18cv2330 JM(NLS)

At the hearing Mr. Mahoney, a credible witness when questioned by the court, stated that he does not know any confidential information about Mr. Glover. The court has no reason to doubt Mr. Mahoney statements or that he does not take his ethical obligations toward his clients seriously. It therefore follows that Mr. Mahoney could not have shared any confidential information regarding Mr. Glover because he does not have any information to share.

Finally, the court cannot ignore the fact that the confidential information about which Plaintiff complains is information that is ordinarily discoverable and was the subject of Defendant's first set of interrogatories. (*See* Comment 5 to Rule 1.9, regarding duties to former clients which states that '[the fact that information can be discovered in a public record does not, by itself, render that information generally known.") As a Plaintiff bringing suit, Mr. Glover has a duty to respond honestly to interrogatories and to provide Defendant with appropriate information when requested. Plaintiff identified his use of aliases in his supplemental disclosure statements and authorized the release of his GEO Group records to Defendant. (*See* Struck Decl. at ¶¶ 8-19, 25.) Despite Plaintiff's counsel's efforts to link the interrogatory requests to an attempt to exploit confidential information on the part of the Defendant, the court declines to read anything untoward into these standard discovery requests. Moreover, the information regarding the aliases was subsequently disclosed by Plaintiff in documents filed by Plaintiff on the court docket, which is accessible to the public, and was also discovered independently by the GEO Group in a search of its own records. These facts provide additional doubt as to the necessity of having to disqualify Mr. Mahoney as local counsel.

**IV. Conclusion**

In accordance with the foregoing, the court finds that Plaintiff has not met his burden of demonstrating that Mr. Mahoney's disqualification from this action is warranted. The

motion is therefore **DENIED**.

IT IS SO ORDERED.

Dated: February 11, 2020

_____
Hon. Jeffrey T. Miller
United States District Judge